## Martin MALINOU, Individually and as Executor of the Estate of Etta E. Malinou

v.

## SEATTLE SAVINGS BANK.

### No. 2008–137–Appeal.

Supreme Court of Rhode Island.

May 7, 2009.

---

Martin S. Malinou, Esq., Plaintiff Pro Se.

Katherine J. McAllister, Esq., for Defendant.

Present: GOLDBERG, Acting C.J., FLAHERTY, SUTTELL, ROBINSON, JJ., and WILLIAMS, C.J. (ret.).

## OPINION

Acting Chief Justice GOLDBERG, for the Court.

This case came before the Supreme Court on April 7, 2009, on an appeal by the

plaintiff, Martin Malinou (plaintiff or Malinou), pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. After hearing the arguments of counsel and examining the memoranda submitted by the parties, we are of the opinion that cause has not been shown and we shall decide this appeal without further briefing and argument. We affirm the judgment of the Superior Court.

## Facts and Travel

By instituting this case, plaintiff was able to delay, for many years, a foreclosure action instituted by defendant, Seattle Savings Bank (defendant), on a mortgage secured by property located at 334 Smith Street in Providence (property). The plaintiff currently owns the property, resides there, and operates his law practice on the premises.[1] The plaintiff's deceased mother (decedent) owned the property from 1945 until her death in 2003, at which point plaintiff acquired title. In November 1991, the decedent executed a Home Equity Conversion Adjustable Rate Note with Rhode Island Housing and Mortgage Finance Corporation (RIHMFC) that was evidenced by a Home Equity Conversion Loan Agreement and was secured by a mortgage (mortgage). Together, these documents created a so-called reverse mortgage,[2] and imposed certain obligations on the decedent that, if unfulfilled, permitted the lender to demand immediate payment of all outstanding principal and accrued interest, plus costs and expenses.

Such an event occurred on August 16, 2000, when RIHMFC demanded payment in full and instituted foreclosure proceedings. In response, decedent filed a Chapter 13 petition that resulted in a plan that required her to reimburse RIHMFC for property taxes; she failed to do so. The Bankruptcy Court approved an amended plan; however, after decedent again failed to comply with the plan, the trustee filed a motion to dismiss the case.[3]

The decedent died in January 2003, and the bankruptcy case was dismissed the next month. On April 30, 2003, RIHMFC assigned the mortgage to defendant as part of a bulk assignment of 359 reverse mortgages, and the transfer was recorded in the Office of the Recorder of Deeds in Providence. On June 30, 2003, defendant notified plaintiff that it held the mortgage and demanded payment in full. The plaintiff failed to make any payments.

In August 2003, defendant notified plaintiff that foreclosure was scheduled to take place on October 15, 2003. Five days before the foreclosure date, plaintiff filed a Chapter 13 bankruptcy proceeding; on March 2, 2005, he filed a second Chapter 13 bankruptcy proceeding. After a series of motions, dismissals, and procedural wranglings, defendant finally scheduled a foreclosure for January 12, 2006. The plaintiff again sought and was granted a temporary restraining order that barred the foreclosure. The plaintiff also institut-

---

1. The plaintiff is representing himself in this matter.

2. A reverse mortgage allows older homeowners to convert the equity in their homes into income. The lender lends money, usually to an elderly borrower, to be used as income, secured by a mortgage on the borrower's home, to be "repaid in a lump sum when the borrower dies or when the property is sold." Black's Law Dictionary 1033 (8th ed. 2004).

3. In anticipation of a bulk sale of mortgages to defendant, RIHMFC, on October 31, 2002, assigned the servicing rights of the mortgage to defendant. However, the sale did not take place at that time, and RIHMFC retained the mortgage in the interim.

ed this action by filing a complaint for equitable relief in the Superior Court.[4]

On January 18, 2006, a hearing on the preliminary injunction and a trial on the merits were consolidated for trial. At a subsequent hearing, plaintiff moved to amend his complaint and asked "at a further time [to] be allowed to get the rest of this information from Fannie Mae." Specifically, in its response to discovery, defendant forwarded a letter dated April 10, 2003 from Fannie Mae to RIHMFC,[5] but the second page of the letter, with the signature of the author, was not included. The letter addressed the bulk assignment of mortgages from RIHMFC to defendant, including the mortgage in question.[6]

On April 5, 2006, the trial justice dismissed plaintiff's complaint in its entirety and judgment was entered on all counts in favor of defendant. The plaintiff failed to timely appeal from that judgment. Rather, almost a year later, on March 29, 2007, plaintiff moved to depose the author of the letter from Fannie Mae under Rule 27(b) of the Superior Court Rules of Civil Procedure, and he also filed a motion under Rule 60(b)(2) of the Superior Court Rules of Civil Procedure seeking to set aside the judgment and for a new trial.[7] On November 16, 2007, the trial justice denied both motions and directed that the April 5, 2006 judgment be entered as the final judgment.[8] On December 5, 2007, plaintiff

filed an appeal with this Court and asserted a number of issues, many of which are not preserved for appellate review.

The record on appeal discloses that since the entry of judgment, several other proceedings have taken place that bear on the instant case and require a brief synopsis. On December 8, 2006, because of the impending foreclosure sale, plaintiff again sued to enjoin defendant from proceeding with the sale. The case was dismissed, and the Superior Court authorized defendant to proceed with the sale on December 12, 2006. Undaunted, plaintiff filed his third Chapter 13 bankruptcy proceeding on December 11, 2006, one day before the scheduled foreclosure sale; an automatic stay was denied. The United States District Court for the District of Rhode Island and the First Circuit Court of Appeals affirmed the decision of the bankruptcy judge. The bankruptcy case was dismissed, and again the dismissal was affirmed. On June 13, 2007, defendant finally foreclosed on the mortgage; however, plaintiff failed to vacate the premises, and eviction proceedings were instituted in the Sixth Division of the state District Court. That case was ordered stayed pending this appeal. "We are more than persuaded that * * * [plaintiff has] had [his] day in court—and then some. The time has come for this litigation to end." *Northern Trust*

---

4. The plaintiff alleged that the mortgage assignment to defendant was void and that unless defendant was enjoined from foreclosing on the mortgage, he would be without an adequate remedy at law.

5. RIHMFC had the servicing rights of the mortgage, but Fannie Mae owned it.

6. The plaintiff contends that there was a discrepancy in the number of loans actually assigned, which according to the letter was 355, not 359 as stated in the purchase agreement. The plaintiff alleges that the subject mortgage

was one of the four mortgages that were not transferred.

7. This Court has held that in the context of a trial without a jury, a motion for a new trial is limited to instances in which there is "newly discovered evidence or manifest errors of law." *Jalex Builders, Inc. v. Monaghan*, 840 A.2d 1142, 1144 (R.I.2004) (citing *Bernier v. Lombardi*, 793 A.2d 201, 202 (R.I.2002)).

8. We remanded the case to the Superior Court with instructions to enter the order of November 16, 2007.

*Co. v. Zoning Board of Review of Westerly,* 899 A.2d 517, 520 (R.I.2006) (mem.).

## Analysis

### Timeliness of First Appeal

■ Before we address the merits in this case, we must determine whether plaintiff's appeal from the judgment was timely. In accordance with Article I, Rule 4(a) of the Supreme Court Rules of Appellate Procedure, a notice of appeal must be filed "within twenty (20) days of the date of the entry of the judgment." We have held that "the twenty-day appeal time commence[s] to run from the first day following the day when the first *valid* appealable order was entered." *Kay v. Menard,* 727 A.2d 665, 666 (R.I.1999) (citing Article I, Rules 4(a) and 20(a) of the Supreme Court Rules of Appellate Procedure). Because the April 5, 2006 judgment was a valid judgment of the Superior Court, and because plaintiff did not file a notice of appeal within twenty days of that date, the appeal is untimely and is not properly before this Court. Accordingly, we decline to reach the merits of the issues raised and shall limit our review to plaintiff's appeal from the order denying the motion to vacate the judgment.

### Motion to Vacate the Judgment

■ Before this Court, plaintiff contends that the trial justice abused her discretion by refusing to vacate the judgment. Rule 60(b)(2) allows a trial justice to relieve a party from judgment if the party has "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)." In passing on the correctness of a decision under Rule 60(b)(2), this Court's review is limited to an examination of the decision to determine "the correctness of the order granting or denying the motion, not the correctness of the original judgment." *Greenfield Hill Investments, LLC v. Miller,* 934 A.2d 223, 224 (R.I.2007) (mem.) (citing *McBurney v. Roszkowski,* 875 A.2d 428, 435 (R.I.2005)). A motion to vacate a judgment is left to the sound discretion of the trial justice and such a ruling will not be disturbed absent an abuse of discretion. *Id.* (citing *Medeiros v. Anthem Casualty Insurance Group,* 822 A.2d 175, 178 (R.I.2003)). Specifically, with regard to Rule 60(b)(2), a motion to vacate should not be granted unless "(1) the evidence is material enough that it probably would change the outcome of the proceedings and (2) 'the evidence was not discoverable at the time of the original hearing by the exercise of ordinary diligence.'" *Medeiros,* 822 A.2d at 178 (quoting *Forcier v. Forcier,* 558 A.2d 212, 213 (R.I.1989)). Even if both of these requirements are met, the motion must be made "within a reasonable time and not more than one year after the judgment." *Flynn v. Al–Amir,* 811 A.2d 1146, 1150 (R.I.2002). "[U]ndue delay may bar relief, even if the motion is made before the one-year period has expired." *Sansone v. Morton Machine Works, Inc.,* 957 A.2d 386, 396 (R.I. 2008) (quoting *Waldeck v. Domenic Lombardi Realty, Inc.,* 425 A.2d 81, 83 (R.I. 1981)). In any event, one year is the extreme limit for a viable motion under Rule 60(b). *Id.* (citing *Tierney v. Conley,* 590 A.2d 865, 866 (R.I.1991)). Here, plaintiff asserted that he had new evidence, which included hypothetical testimony from Fannie Mae, and also claimed that Fannie Mae's alleged "unethical corporate culture," which became public because of federal investigations into the organization, were grounds for a new trial.[9]

9. The plaintiff argues that his motion to vacate the judgment also could have been granted under Rule 60(b)(3) of the Superior Court Rules of Civil Procedure, which states that a

The trial justice first addressed the timing of the Rule 60(b)(2) motion. Although she noted that the motion was made within the one-year time-frame, the trial justice nonetheless suggested that the delay was unreasonable because the motion was filed one week short of the one-year deadline, and plaintiff had known the identity of the author of the Fannie Mae letter since the April 2006 judgment was entered. The trial court also focused on the fact that plaintiff delayed moving to vacate the judgment until all of his other avenues of relief had been denied.

Ultimately, the trial justice found that, even if timely, plaintiff had failed to demonstrate either that the new evidence was material or that such evidence was not discoverable at the time of the trial. First, concerning the federal investigation into Fannie Mae, the trial justice determined that there was no indication that the regional office involved in this transaction was implicated in the scandal in any way; further, she found that when it consented to pay a $400 million penalty, Fannie Mae did not admit guilt. For both these reasons, the evidence of Fannie Mae's purported unethical culture was immaterial and had no bearing on plaintiff's defense whatsoever.

The trial justice then found that the hypothetical evidence about RIHMFC's

sale of the mortgage also was not material and that plaintiff had failed to prove that it was not discoverable during the trial. The plaintiff never demanded that the author of the Fannie Mae letter be deposed or called as a witness. Rather, on the morning of trial he merely asked that "at the completion of today's hearing, that at a further time he be allowed to get the rest of this information from Fannie Mae." There was not a formal motion to depose the witness until plaintiff filed a motion to vacate the judgment, nearly one year after the trial court's judgment. Accordingly, we are satisfied that plaintiff's motion to vacate the judgment in this case properly was denied.

## Motion to Depose Pursuant to Rule 27(b)

■ The plaintiff also asserts that the trial justice abused her discretion by denying his motion for a posttrial deposition of a representative of Fannie Mae based on Rule 27(b) [10] to determine whether the mortgage was included in the bulk transfer. This Court has had occasion to review a trial justice's decision to grant or deny such a motion. In *Myles v. Women and Infants Hospital of Rhode Island,* 504 A.2d 452, 455 (R.I.1986), we held that "the plain language of the rule authorizes a trial justice to permit a deposition to be taken,

---

party may be relieved of a judgment based on fraud, misrepresentation, or other misconduct by the adverse party. The plaintiff suggests that, because defendant allegedly violated a discovery order, Rule 60(b)(3) applies; however, plaintiff clearly based his motion to vacate on Rule 60(b)(2), *not* Rule 60(b)(3). The plaintiff also contends that the trial justice abused her discretion in denying his motion because she "ignored the fact that at the time of trial Fannie Mae records showed that [Seattle Mortgage Company] and not [Seattle Savings Bank]" was the servicer of the mortgage. The plaintiff failed to raise this issue at trial and it need not be decided by this Court. *See State v. Bido,* 941 A.2d 822, 828 (R.I.2008)

("[T]his Court's 'raise-or-waive' rule precludes our consideration of an issue that has not been raised and articulated at trial.").

10. Rule 27(b) of the Superior Court Rules of Civil Procedure provides in pertinent part:

"[T]he court may allow the taking of depositions of witnesses to perpetuate their testimony for use in the event of further proceedings in this court. * * * If the court finds that the perpetuation of the testimony is proper to avoid failure or delay of justice, it may make an order allowing the depositions to be taken * * *."

pending appeal, only if the court determines that it is necessary to (1) perpetuate testimony for use in the event of further proceedings and (2) avoid the failure or delay of justice." We noted that Rule 27(b) is similar to its federal counterpart and that federal courts allow such motions "only in special circumstances where it is necessary to preserve testimony and require the moving party to show why the evidence is likely to be lost." *Myles,* 504 A.2d at 455 (citing *Ash v. Cort,* 512 F.2d 909, 913 (3d Cir.1975)).

The record shows that immediately after the trial justice denied the plaintiff's motion to vacate the judgment, the plaintiff orally moved to depose the witness from Fannie Mae. The trial justice noted that the plaintiff was "essentially asking to do discovery after trial and therein lies the problem. I have addressed it extensively in this decision." Although the trial justice did not specifically make a finding, it is clear that the trial justice already had found the witness's proposed testimony to be speculative and not in accordance with Rule 27(b). In doing so, she neither erred nor abused her discretion.

## Conclusion

For the foregoing reasons, we affirm the judgment of the Superior Court, to which the papers in this case may be remanded.