Affirmed and Opinion filed July 21, 2009








Affirmed and Opinion filed July 21, 2009.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-08-00109-CV

____________

 

FINANCIAL FREEDOM SENIOR FUNDING
CORPORATION,
Appellant

 

V.

 

MICHAEL J. HORROCKS, ADMINISTRATOR
OF THE ESTATE OF MARY EDYTHE MULLANE, DECEASED, Appellee

 



 

On Appeal from the Probate
Court Number Four

Harris County, Texas

Trial Court Cause No. 338,304-402

 



 

O P I N I O N

This is an appeal from the granting of a summary judgment
in favor of the appellee, Michael J. Horrocks, administrator of the Estate of
Mary Edythe Mullane, Deceased, the plaintiff in a declaratory judgment action
seeking to quiet title to Mary Edythe Mullane=s former
homestead.  We affirm.

 








Factual and Procedural Background

Mullane was married to Robert Mullane.  In 1977 the
Mullanes purchased a home located at 11018 Southwold in Harris County, Texas
(the AHomestead@).  The Homestead
was originally the community property of the Mullanes.  Robert Mullane passed
away in 1985, leaving his interest in the Homestead to his wife.  Mullane died
on March 21, 2003.  Appellee is Mullane=s only child and
he was appointed the administrator of Mullane=s estate in April,
2003.

After appellee was appointed administrator, he received a
court order allowing him to sell the Homestead.  At that point in time, he
discovered a lien had been placed on the Homestead by appellant, Financial
Freedom Senior Funding Corporation.  Appellee learned that Mullane, on November
20, 2002, four months prior to her death, had completed a reverse mortgage
transaction with appellant.  As part of this transaction, Mullane signed an
Adjustable Rate Note (Home Equity Conversion) and an Adjustable Rate Second
Note (Home Equity Conversion) (the ANotes@).  Mullane also
signed an Adjustable Rate Deed of Trust (Home Equity Conversion) and a Second
Adjustable Rate Deed of Trust (Home Equity Conversion) (the ADeeds of Trust@).  Norman
Johansen also participated in the reverse mortgage transaction and signed the
above referenced documents as a ABorrower.@  Despite signing
as a Borrower, the summary judgment evidence in the record on appeal does not
reveal what, if any, relationship Johansen had with Mullane.

Paragraph 4 of the Notes contains the following language
regarding payment:

4.       MANNER OF PAYMENT

(A)     Time

Borrower shall pay all outstanding principal and accrued interest to
Lender upon receipt of a notice by Lender requiring immediate payment in full,
as provided by Paragraph 7 of this Note.

Paragraph
7 of the Notes provides:








7.       IMMEDIATE PAYMENT IN FULL

(A) Death or Sale

Lender may require immediate payments in full of outstanding principal
and accrued interest if:

(i)      All Borrowers die, or

(ii)      All of a Borrower=s title in the Property (or his beneficial interest in a
trust owning all or part of the Property) is sold or otherwise transferred and
no other Borrower retains (a) title to the Property in fee simple, (b) a
leasehold under a lease for less than 99 years which is renewable or a lease
having a remaining period of not less than 50 years beyond the date of the
100th birthday of the youngest Borrower (or retaining a beneficial interest in
a trust with such an interest in the Property), or (c) a life estate in the
Property.

The
Notes also include paragraph 8 which provides: AWAIVERS Borrower waives
the rights of presentment and notice of dishonor.  >Presentment= means the right
to require [appellant] to demand payment of amount due.  >Notice of dishonor= means the right
to require [appellant] to give notice to other persons that amounts due have
not been paid.@  With regard to payment, the Deeds of Trust provide: APayment of
Principal and Interest: Borrower shall pay when due the principal of, and
interest on, the debt evidenced by the Note.@  In addition, the
Deeds of Trust include Paragraph 9 containing the same language as Paragraph 7
of the Notes.  The Deeds of Trust also provide: ABORROWER COVENANTS
that Borrower is lawfully seised of the estate hereby conveyed and has the
right to grant and convey the Property and that the Property is unencumbered.@  Finally,
Paragraph 4 of the Deeds of Trust includes the following language relevant to
this appeal: ABorrower shall occupy, establish, and use the Property
as Borrower=s principal residence after the execution of this
Security Instrument and Borrower (or at least one Borrower, if initially more
than one person are Borrowers) shall continue to occupy the Property as
Borrower=s principal
residence for the term of this Security Instrument.@








After learning about the reverse mortgage transaction,
appellee, on July 30, 2004, forwarded a letter to appellant that, if it had a
claim against Mullane=s estate, it was required to present the
claim to appellee within the time prescribed by law.  On July 17, 2007, more
than four years after Mullane had died, appellant sent a Notice of Acceleration
of Loan Maturity.

On August 24, 2007, appellee filed his second amended
petition seeking, among other causes of action,[1]
to quiet title to the Homestead and a declaratory judgment that appellee is the
sole legal owner of the Homestead and that the Homestead is unencumbered by
appellant=s liens.  That same day, appellee moved for summary
judgment on his suit to quiet title and for declaratory judgment.  The trial
court granted appellee=s motion and after denying appellant=s motion for new
trial, granted appellee=s motion to sever and entered a final
judgment quieting title in favor of appellee.  This appeal followed.

Discussion

Appellant raises two separate issues on appeal, both of
which generally challenge the propriety of the trial court granting appellee=s motion for
summary judgment.  However, within its brief, appellant raises two specific
reasons the summary judgment should be reversed.  First, appellant contends the
Notes are not demand notes and, since they contained an optional acceleration
clause, the statute of limitations did not begin to run until appellant
actually accelerated them.  Second, appellant  asserts, assuming the statute of
limitations began to run upon the existence of certain conditions, the summary
judgment evidence does not establish as a matter of law that such conditions
existed until August 3, 2006 at the earliest.

 








A.      The
Standard of Review

The movant for summary judgment has the burden to show
there is no genuine issue of material fact and is entitled to judgment as a
matter of law.  Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548 (Tex.
1985).  A party moving for summary judgment on a statute of limitations
affirmative defense must prove conclusively that defense=s elements.  Shah
v. Moss, 67 S.W.3d 836, 842 (Tex. 2001).  If the movant establishes that
the statute of limitations bars the action, the non-movant must then adduce
summary judgment proof raising a fact issue in avoidance of the statute of
limitations.  Diversicare Gen. Partners, Inc. v. Rubio, 185 S.W.3d 842,
846 (Tex. 2005).  In determining whether there is a genuine fact issue
precluding summary judgment, evidence favorable to the non-movant is taken as
true and the reviewing court makes all reasonable inferences and resolves all
doubts in the non-movant=s favor.  Nixon, 690 S.W.2d at 548B549.  If there is
no genuine issue of material fact, summary judgment should issue as a matter of
law.  Haase v. Glazner, 62 S.W.3d 795, 797 (Tex. 2001).  We review a
trial court=s summary judgment de novo. Valence Operating Co.
v. Dorsett, 164 S.W.3d 656, 661 (Tex. 2005).

B.      Contract
Construction

This case involves the interpretation of two notes as well
as two deeds of trust.  Courts employ the same rules for interpreting a note
that they use to interpret a contract.  EMC Mortgage Corp. v. Davis, 167
S.W.3d 406, 413 (Tex. App.CAustin 2005, pet. denied).  In addition,
the interpretation of a deed of trust is governed by the same rules applied to
contracts.  Robinson v. Saxon Mortgage Servs., Inc., 240 S.W.3d 311, 313
(Tex. App.CAustin 2007, no pet.).  Further, a deed of trust is
construed along with the note it is intended to secure.  Id.








In
construing a written contract, the primary concern of the court is to ascertain
the true intentions of the parties as expressed in the instrument.  Valence Operating
Co.,
164 S.W.3d at 662. 
Ordinarily, the writing alone is sufficient to express the parties= intentions for it is the objective,
not subjective, intent that controls.  Matagorda County Hosp. Dist. v.
Burwell, 189 S.W.3d 738, 740 (Tex. 2006) (per curiam).  To achieve this, we
examine and consider the entire writing in an effort to harmonize and give
effect to all the provisions of the contract so that none will be rendered
meaningless.  Valence Operating Co., 164 S.W.3d at 662.  Contract terms
are given their plain, ordinary, and generally accepted meanings unless the
contract itself shows them to be used in a technical or different sense.  Id. 
We construe contracts from a utilitarian standpoint bearing in mind the
particular business activity sought to be served and will avoid when possible
and proper, a construction which is unreasonable, inequitable, and oppressive. 
Frost Nat=l Bank v. L & F Distrbs., Ltd., 165 S.W.3d 310, 312 (Tex. 2005). 
The contract must be read as a whole, rather than by isolating a certain
phrase, sentence, or section of the agreement.  Fein v. R.P.H., Inc., 68
S.W.3d 260, 266 (Tex. App.CHouston [14th Dist.] 2002, pet. denied).  We presume the
parties to the contract intended every clause to have some effect.  Id. 
(citing Heritage Res., Inc. v. NationsBank, 939 S.W.2d 118, 121 (Tex.
1996)).

C.      Are the
Notes demand notes?

Initially, appellant contends the Notes are not demand
notes and the statute of limitations did not begin to run until after appellant
sent its notice of acceleration.  Appellee responds the Notes are demand notes
because they lack a definite time of payment.

Section 3.108 of the Texas Business & Commerce Code
provides, in relevant part:

(a)     A promise or order is Apayable on demand@ if it:

(1)     states that it is payable on demand or at
sight, or otherwise indicates that it is payable at the will of the holder; or

(2)     does not state any time of payment.








(b)     A promise or order is Apayable at a definite time@ if it is payable on elapse of a
definite period of time after sight or acceptance or at a fixed date or dates
or at times readily ascertainable at the time the promise or order is issued .
. .

Tex.
Bus. & Com. Code Ann. ' 3.108 (Vernon 2002).

Citing section 3.108(a)(2) of the Business & Commerce
Code, appellee argues that since the Notes state they are due upon receipt of a
notice from appellant requiring payment in full and do not otherwise include a
specific time for payment, they are demand notes and limitations began to run
on the date they were signed.  However, to accept appellee=s view of the
Notes we would have to forget the rules of contract construction and ignore the
language found at the end of Paragraph 4 limiting appellant=s ability to
demand payment to when one or more of the conditions listed in Paragraph 7
occurred.  Instead of
focusing on such a small portion of the Notes, we must examine and consider the
entire writing in an effort to harmonize and give effect to all the provisions
of the Notes so that none will be rendered meaningless.  Valence Operating Co., 164 S.W.3d at 662. While the Notes do
not list a specific maturity date, they do contain conditions which create a
readily ascertainable time for payment.  Tex. Bus. & Com. Code Ann. ' 3.108(b); see
Maceo v. Doig, 558 S.W.2d 117, 120 (Tex. Civ.  App.CAustin 1977, writ
ref=d n.r.e.) (holding
oral promise to pay in the summer was sufficiently definite to support a
finding of a binding extension of the time for payment of a promissory note); see
also Martin v. Fannin Bank, 389 S.W.2d 724, 726 (Tex. Civ.  App.CHouston 1965, no
writ) (holding promise to pay once a court had entered a particular order was
sufficiently certain to support finding of a binding extension of the time for
payment of a promissory note).  Therefore, we hold the Notes are payable at a
definite time as established by the conditions listed in Paragraph 7.

D.      When did
appellant=s cause of action accrue?








While we agree with appellant that the Notes are not demand
notes, we do not agree with appellant=s contention that
the limitations period began to run only when appellant sent its notice of
acceleration.  In support for this argument, appellant relies exclusively on
the case of Holy Cross Church of God in Christ v. Wolf, 44 S.W.3d 562,
566 (Tex. 2001).  In Wolf, a borrower obtained summary judgment on his
claim that the lender=s foreclosure sale was void under the
statute of limitations.  Id.  While this particular fact is similar to
the present case, the similarities stop there as the note at issue in Wolf
was an installment note.  Id. at 567.  Unlike the note in Wolf,
the Notes at issue here do not provide for repayment through periodic
installment payments with provision for acceleration of any outstanding
payments in the event of default.  Instead, the Notes themselves provide that
payment shall be made in full upon demand by appellant once specified
conditions occurred.  Because the entire debt would always be due upon demand,
there was never any requirement that appellant accelerate the debt first.  See
Ogden v. Gibraltar Sav. Ass=n., 640 S.W.2d 232,
234 (Tex. 1984) (holding that a proper notice of acceleration cuts off the
debtor=s right to cure
his default and gives notice that the entire debt is due and payable). 
Therefore, because we are not dealing with an installment note, Wolf does
not control the accrual of appellant=s cause of action
to enforce the liens on the Homestead.








Because the Notes are payable at a definite time, appellant=s cause of action
to enforce the liens on the Homestead accrued when one or more of the
conditions listed in Paragraph 7 occurred.  See Loomis v. Republic Nat=l Bank of Dallas, 653 S.W.2d 75,
77 (Tex. App.CDallas 1983, writ ref=d n.r.e.) (if a
note is payable at a definite time, limitations begins to run at the maturity
of the note).[2] 
Therefore, we turn to appellant=s second contention and examine whether
appellee proved, as a matter of law, the date appellant=s cause of action
to enforce the liens on the Homestead accrued and when the statute of
limitations expired.  Initially, appellant contends, based on language in the
Deeds of Trust, that Johansen had a life estate in the Homestead and appellant=s cause of action
to enforce its liens did not accrue until August 3, 2006, the purported date of
Johansen=s death.[3] 
Appellant bases this contention on two excerpts from the Deeds of Trust: (1) ABORROWER COVENANTS
that Borrower is lawfully seised of the estate hereby conveyed and has the
right to grant and convey the Property and that the Property is unencumbered;@ and (2) ABorrower shall
occupy, establish, and use the Property as Borrower=s principal
residence after execution of this Security Instrument and Borrower (or at least
one Borrower, if initially more than one person are Borrowers) shall continue
to occupy the Property as Borrower=s principal
residence for the term of this Security Instrument.@   Based on these
short excerpts, appellant concludes the statute of limitations would not expire
until August 3, 2010 and therefore the trial court improperly granted appellee=s motion for
summary judgment based on limitations.[4] 
We disagree with appellant=s analysis.








Generally, a life estate is created by a deed or will where
the language of the instrument manifests an intention on the part of the
grantor or testator to pass to a grantee or devisee a right to possess, use, or
enjoy property during the period of the grantee=s life.  Eversole
v. Williams, 943 S.W.2d 141, 143 (Tex. App.CHouston [1st
Dist.] 1997, no writ).  While no particular form of words is necessary to
create a life estate, the words used must clearly express the grantor=s intent to create
a life estate.  See Miller v. Wilson, 888 S.W.2d 158, 161 (Tex. App.CEl Paso 1995, writ
denied).  Here, appellant argues, without citing any legal authority addressing
a deed of trust, that Mullane granted Johansen a life estate through the above
referenced language in the Deeds of Trust, documents drafted by appellant, not
Mullane.  In making this argument, appellant mistakes the purpose of a deed of
a trust.  The purpose of a deed of trust is to secure to a lender the repayment
of a borrower=s debt.  Sonny Arnold, Inc. v. Sentry Sav. Assoc.,
615 S.W.2d 333, 339 (Tex. Civ. App.CAmarillo, 1981) aff=d 633 S.W.2d 811
(Tex. 1982).  To accomplish this purpose, a deed of trust creates only a lien
on property and does not constitute a conveyance of the property.  Sandel v.
Burney, 714 S.W.2d 40, 41 (Tex. App.CSan Antonio 1986,
no writ).   We hold that, as a matter of law, the Deeds of Trust did not create
a life estate in Johansen.

Therefore, we turn to the summary judgment evidence
submitted by appellee.  The evidence of legal title to the Homestead in the
summary judgment record is the general warranty deed from Wagner Homes, Inc. to
Robert and Mary Mullane, dated April 1, 1977.  This is followed by the Last Will
and Testament of Robert Mullane wherein he bequeathed and devised his entire
estate in fee simple to Mary Mullane.  Title was then confirmed in Mary Mullane
by the Decree Admitting Will to Probate dated January 22, 1986.  Because we
have determined the Deeds of Trust did not convey a life estate to Johansen,
appellee established, as a matter of law, that Mary Mullane was the sole owner
in fee simple of the Homestead at the time of her death on March 21, 2003.  In
response, appellant produced no summary judgment evidence raising a fact issue
that Johansen possessed a life estate on the Homestead.   Therefore, under
Paragraph 7 of the Notes, appellant=s cause of action
to enforce its liens on the Homestead accrued on March 21, 2003 and the statute
of limitations expired four years later.  Therefore, the liens and powers of
sale to enforce the liens are  unenforceable.  Tex. Civ. Prac. & Rem. Code
Ann. ' 16.035(a) &
(d) (Vernon 2002).  We overrule appellant=s issues on
appeal.

 

 

 








Conclusion

Having overruled appellant=s issues on
appeal, we affirm the trial court=s final judgment.

 

 

 

 

/s/      John S. Anderson

Justice

 

 

Panel consists of Chief Justice Hedges and Justices
Anderson and Seymore.                               









[1]  Appellee also filed suit against Norman Johansen
alleging various causes of action including breach of fiduciary duty and theft.





[2]  This holding fits with the overall concept of
reverse mortgages which permits an elderly borrower to convert the equity in
their home into income with no personal obligation to repay the note.  Malinou
v. Seattle Sav. Bank, 970 A.2d 6, 8 n.2 (R. I., 2009).  Instead, the non-recourse
loan, which is secured by a mortgage on the elderly borrower=s home, is repaid in a lump sum from the proceeds from
the sale of the home only after the borrower dies or sells the property.  Id.






[3]  Of the conditions mentioned in Paragraph 7, the only
one at issue in this appeal is 7(A)(ii)(c): ALender
may require immediate payments in full of outstanding principal and accrued
interest if: . . . All of a Borrower=s
title in the Property . . . is sold or otherwise transferred and no other
Borrower retains . . . (c) a life estate in the Property.@  While it has no bearing on the outcome of this case,
we note there is no evidence in the summary judgment record establishing the
date of Johansen=s death, or even that he has died.





[4]  A suit for the recovery of real property under a real property lien or
the foreclosure of real property must be brought no later than four years after
the cause of action accrues.  Tex. Civ. Prac. & Rem. Code Ann. ' 16.035(a) (Vernon 2002).