# NO. 12-13-00379-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *MARTHA N. HILL AND GARY HILL,* *APPELLANTS* | § | *APPEAL FROM THE 114TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *WINNON EARL SWORD,* *APPELLEE* | § | *SMITH COUNTY, TEXAS* |

## *OPINION*

In two issues, Martha N. Hill and Gary Hill appeal the trial court's denial of their motion for summary judgment, and its grant of Winnon Earl Sword's motion for summary judgment determining that his lien against their property was valid and subject to foreclosure. In two issues, the Hills contend that their summary judgment evidence raised a fact issue regarding whether the property is exempt from foreclosure because of its homestead status. We affirm.

## BACKGROUND

In 2004, the Hills executed a $60,000.00 promissory note in favor of Sword secured by a deed of trust granting a lien on a 126 acre tract that they owned.[1] In 2006, they executed a $200,000.00 promissory note in favor of Sword and secured it by another deed of trust granting a lien on the property.[2] The interest rates on the two loans were 12% and 8.75%, respectively.

When the Hills failed to pay the promissory notes, Sword filed a suit seeking a declaratory judgment that his deed of trust liens were valid. In 2011, the parties entered into an agreed judgment that stated the 2004 and 2006 deed of trust liens were "valid, perfected, and enforceable" against the property. The judgment also awarded Sword $327,881.98 for the

---

[1] The note is dated 2003; the deed of trust is dated 2004. We will refer to both as the 2004 instruments.

[2] Also in 2006, the Hills signed a $40,000.00 unsecured promissory note. That loan has been forgiven by Sword and is not part of this suit.

principal balance of the debt, all prejudgment interest, $7,500.00 in attorney's fees, and court costs, to bear interest at a rate of 6% per annum. The Hills then executed a promissory note and a third deed of trust explicitly to renew and extend the 2004 and 2006 notes and deed of trust liens. The note stated that its principal was the judgment amount of $327,881.98. It also provided new payment terms and an interest rate of 6%.

Later in 2011, Martha Hill filed a voluntary Chapter 7 bankruptcy. She claimed the 126 acre tract and related mineral interests as homestead. In February 2012, her discharge was granted. The Hills failed to pay the 2011 promissory note, and Sword sought an order from the bankruptcy court determining whether his foreclosure under the 2011 deed of trust would violate the court's discharge order. The court determined that foreclosure would not violate that order, and Sword posted the property for nonjudicial foreclosure.

The Hills then filed a suit seeking a declaration that the 2011 deed of trust lien was invalid. They filed a traditional motion for summary judgment seeking determinations that the property constituted their homestead and that Sword had no valid or enforceable lien against it. Sword filed a traditional motion for summary judgment on various affirmative defenses and also asserted that there were no disputed fact issues relating to his claim. The trial court rendered judgment granting Sword's motion for summary judgment and denying the Hills' motion for summary judgment. The Hills filed this appeal.

### VALIDITY AND ENFORCEABILITY OF LIEN

In their first issue, the Hills contend that the trial court erred in denying their motion for summary judgment and in granting Sword's. In their second issue, they argue that there was more than a scintilla of evidence showing the property was their homestead and not subject to forced sale for payment of the debt to Sword.

The Hills have not challenged, either in their briefs or at oral argument, the validity of the 2004 and 2006 deeds of trust, or that of the 2011 agreed judgment. Nor does Sword dispute that the property was the Hills' homestead at the time they executed the 2011 promissory note and deed of trust. Thus, our resolution of the dispute between the parties turns on whether the 2011 documents constitute a refinance of a valid lien on a homestead (as Sword contends) or an extension of credit (as the Hills urge).

## Standard of Review

We review a trial court's decision to grant summary judgment de novo. ***Tex. Mun. Power Agency v. Click Util. Comm'n***, 253 S.W.3d 184, 192 (Tex. 2007). We review the evidence presented in the motion and response in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. ***Mann Frankfort Stein & Lipp v. Fielding***, 289 S.W.3d 844, 848 (Tex. 2009). To succeed in a motion for summary judgment under rule 166a(c), a movant must establish that there is no genuine issue of material fact so that the movant is entitled to judgment as a matter of law. ***Western Inv., Inc. v. Urena***, 162 S.W.3d 547, 550 (Tex. 2005). When both parties move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review the summary judgment evidence presented by both sides, determine all questions presented, and render the judgment the trial court should have rendered. ***Mid-Continent Cas. v. Global Enercom Mgmt***., 323 S.W.3d 151, 153-54 (Tex. 2010).

## Applicable Law

Homestead properties are afforded special and unique protections under the Texas Constitution. *See* TEX. CONST. art. XVI, § 50; *see also* ***Thomas v. Graham Mortg. Corp***., 408 S.W.3d 581, 588 (Tex. App.—Austin 2013, pet. denied). The Texas Constitution protects a homestead from forced sale for the payment of debt, with some exceptions. TEX. CONST. art. XVI, § 50(a). Payment of the refinance of a lien against a homestead is one exception. TEX. CONST. art. XVI, § 50(a)(4). The Texas Property Code also allows encumbrance of a homestead for the refinance of a lien against it. TEX. PROP. CODE ANN. § 41.001(b)(5) (West 2014).

Additionally, the constitution includes an exception for a new extension of credit, provided the debt satisfies an extensive list of constitutionally mandated restrictions and requirements. TEX. CONST. art. XVI, § 50(a)(6). The test for determining whether a restructuring of an existing home equity loan is a new extension of credit is "whether the secured obligations are those incurred under the terms of the original loan." ***Sims v. Carrington Mortg. Servs., L.L.C.***, 440 S.W.3d 10, 16 (Tex. 2014). Factors indicating that a restructuring is a new extension of credit may include satisfaction and replacement of the original note, or an advancement of new funds. ***Id.*** On the other hand, capitalization of past due interest, taxes, insurance premiums or fees is neither an advance of additional funds nor a new extension of credit if those amounts

3

are among the obligations assumed by the borrower under the terms of the original loan. *Id.* "If the restructuring of a home equity loan does not involve a new extension of credit, the requirements of Section 50(a)(6) do not apply." *Id.* at 15.

**Nature of the 2011 Restructuring**

The Hills argue that the 2011 deed of trust lien is invalid and unenforceable because the property constitutes their homestead and the restructured debt secured by the lien is a new extension of credit that does not meet the requirements of article XVI, section 50(a)(6) of the Texas Constitution. Sword does not dispute that the property is the Hills' homestead, or argue that the restructured debt meets the requirements of section 50(a)(6). Rather, he contends that there was no new extension of credit, and his lien is enforceable as a refinance under section 50(a)(4).

**1. Satisfaction and Replacement**

The Hills first contend that the restructured debt constitutes a new extension of credit because the 2004 and 2006 notes were satisfied and replaced by the 2011 note. *See Sims*, 440 S.W.3d at 17. In support of their contention, they cite *Krauss v. West*, 123 S.W.2d 946 (Tex. Civ. App.—El Paso 1938, writ dism'd judgm't cor.). In *Krauss*, a secured lender had sued a borrower and obtained "a judgment thereon foreclosing the deed of trust lien on the property." The court of appeals concluded that the note and deed of trust lien were thereby merged into that judgment. The lender then accepted a new note and a new deed of trust, which the court of appeals concluded "paid" the judgment.

Satisfaction is the fulfillment of an obligation. BLACK'S LAW DICTIONARY 1543 (10th ed. 2014); *see also Hill v. Bartlette*, 181 S.W.3d 541, 549 n.2 (Tex. App.—Texarkana 2005, no pet.). Accordingly, we agree that if the earlier notes and judgment had been "paid" by the Hills, their obligation thereunder would have been "satisfied." But unlike *Krauss*, in which the judgment foreclosed the deed of trust lien, the judgment in the instant case merely adjudicated the deeds of trust and the deed of trust liens valid and enforceable. Thus, *Krauss* is distinguishable, and the judgment here was not "paid" or "satisfied and replaced" by the 2011 note and deed of trust.

**2. Capitalization of Attorney's Fees**

Next, the Hills contend that the $7,500.00 in attorney's fees that was capitalized in the agreed judgment and subsequent 2011 instruments was a new extension of credit. We disagree.

4

Attorney's fees that are authorized under the original notes are not an extension of credit and may be capitalized in any new refinancing. *See **Sims***, 440 S.W.3d at 17.

The 2004 promissory note provided as follows:

> If this note or any instrument securing or collateral to it is given to an attorney for collection or enforcement, or if suit is brought for collection or enforcement, or if it is collected or enforced through probate, bankruptcy, or other judicial proceeding, then Maker shall pay Payee all costs of collection and enforcement, including reasonable attorney's fees and court costs, in addition to other amounts due. Reasonable attorney's fees shall be 10% of all amounts due unless either party pleads otherwise.

The 2006 promissory note similarly provided that "Borrower also promises to pay reasonable attorney's fees and court and other costs if this note is placed in the hands of an attorney to collect or enforce the note." Thus, the attorney's fees are authorized in the original notes and are not a new extension of credit. *See **id**.*

### 3. **Nonmonetary Obligations**

Finally, the Hills contend that certain nonmonetary obligations in the 2011 deed of trust that are not found in the 2004 and 2006 deeds of trust constitute an extension of credit. The obligations cited by the Hills are

(1)     the obligation to give notice of any contamination or hazardous spill on the property;

(2)     the obligation to comply with environmental laws;

(3)     certification that there had been no contamination or hazardous spill on the property and that the Hills were in compliance with environmental laws;

(4)     a new default event in case of the Hills' default under any loan agreement with Sword;

(5)     Sword's right to make reasonable entry and inspection of the property;

(6)     waiver of the right to require Sword to marshal or prioritize for sale any portion of the property;

(7)     waiver of any release of obligations based on Sword's actions or course of dealing under the note;

(8)     waiver of the statutory defense to a suit to collect a deficiency on the note, and of the right of offset against the note;

(9)     the grant of a security interest in all personal property, equipment, fixtures, and farm products attached to the property;

(10)    agreement that the deed of trust serves as a fixture filing and financing statement;

(11)    agreement that the real and personal property may be sold as a whole;

(12)    agreement that Sword may proceed as a secured party under Article 9 of the Texas Business and Commerce Code;

(13)    agreement to assign Sword the rights and interests in certain items related to the property as additional security; and

(14)    restriction from mining or quarrying without Sword's written permission.

The supreme court has defined "credit" as "the ability to assume a debt repayable over time," and an "extension of credit" as that which "affords the right to do so in a particular situation." *Sims*, 440 S.W.3d at 15-16. Here, the above items cited by the Hills do not afford them a new right to assume a debt. The only debt secured by the deed of trust lien on the property under the 2011 restructuring is the debt previously existing under the earlier notes and agreed judgment. Therefore, we conclude that these items do not create a new extension of credit. *See id.*

The Hills also point in particular to the new default event in the 2011 deed of trust as creating a new extension of credit. The provision states, "An Event of Default occurs under this Deed of Trust under any of the following circumstances: . . . c. Grantor defaults under any loan agreement with Beneficiary, or any supplemental agreement to the Note." The Hills argue that this provision impermissibly renders the property security for all other debt owing to Sword. In support of this contention, they urge, as the court stated in *Sims*, that "a restructuring to make the homestead lien security for another indebtedness, such as the borrower's consumer or credit card debt, would certainly be a new extension of credit." *Sims*, 440 S.W.3d at 15-16. We do not agree that the deed of trust provision here makes the property security for another indebtedness. First, no particular indebtedness is described, and thus might not now or ever exist. Second, the 2006 deed of trust provides that it "secures payment of any debt that Grantor may subsequently owe to Lender." Therefore, even if the deed of trust makes the property security for another indebtedness, this is not a new obligation and not a new extension of credit.

6

### 4. The 2011 Note and Deed of Trust

Sword argues that his lien is valid and enforceable notwithstanding the evidence of the property's homestead status because the debt it falls within the exception in Texas Constitution article XVI, section 50(a)(4)—the refinance of a lien against a homestead.

In examining this argument, we consider the 2011 note along with the 2011 deed of trust. *See Jones v. Kelley*, 614 S.W.2d 95, 98 (Tex. 1981) ("The general rule is that separate instruments or contracts executed at the same time, for the same purpose, and in the course of the same transaction are to be considered as one instrument, and are to be read and construed together."); *see also Robinson v. Saxon Mortg. Serv., Inc*., 240 S.W.3d 311, 313 (Tex. App.— Austin 2007, no pet.). ("A deed of trust is construed along with the note it is intended to secure.") The 2011 deed of trust states as follows:

> 15. Grantor represents that this deed of trust and the Note are given for the following purposes: a) in renewal and extension of the sum left owing and unpaid by Grantor upon that one certain promissory note in the original principal sum of $60,000.00, dated August 3, 2003, executed by Grantor and payable to the order of W. E. Sword; b) in renewal and extension of the sum left owing and unpaid by Grantor upon that one certain promissory note in the original principal sum of $200,000.00, dated October 4, 2006, executed by Grantor and payable to the order of W.E. Sword; and c) in renewal and extension of the balance owed to Beneficiary under the terms of an agreed judgment entered in the case styled W. E. Sword vs. Gary R. Hill and Martha N. Hill, Cause No. 11-0023-B, in the 114th Judicial District Court of Smith County, Texas.

Similar language for renewing and extending promissory notes has been approved by the Texas Supreme Court. *See McGeorge v. Van Meter*, 358 S.W.2d 580, 581 (Tex. 1962). We see no reason to construe the language in this case differently.

### 5. Conclusion

We conclude that the 2011 promissory note is a renewal and extension of the 2004 and 2006 notes, and does not satisfy and replace them such that the 2011 restructuring constitutes a new extension of credit. We further conclude that the restructuring of the Hills' loan through the 2011 promissory note and deed of trust was a refinance of a valid indebtedness secured by valid liens on the property. Therefore, even if the property constituted the Hills' homestead at the time of the restructuring, Sword is not constitutionally prohibited from foreclosing under the 2011 deed of trust. The Hills' first and second issues are overruled.

## DISPOSITION

Having overruled the Hills' two issues, we *affirm* the judgment of the trial court.

**JAMES T. WORTHEN**
Chief Justice

Opinion delivered January 7, 2015.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**JANUARY 7, 2015**

**NO. 12-13-00379-CV**

**MARTHA N. HILL AND GARY HILL,**
Appellants
V.
**WINNON EARL SWORD,**
Appellee

Appeal from the 114th District Court

of Smith County, Texas (Tr.Ct.No. 12-2467-C/B)

THIS CAUSE came to be heard on the oral arguments, appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that all costs of this appeal are hereby adjudged against the appellants, **MARTHA N. HILL AND GARY HILL,** for which execution may issue, and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*