**FINANCIAL FREEDOM SENIOR FUNDING CORPORATION, Appellant**

v.

**Michael J. HORROCKS, Administrator of the Estate of Mary Edythe Mullane, Deceased, Appellee.**

**No. 14–08–00109–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

July 21, 2009.

Thomas A. Ryan, Irving, TX, David L. Patterson, Robert D. Ramage, Dallas, TX, for Appellant.

Gus G. Tamborello, Houston, TX, for Appellee.

Panel consists of Chief Justice HEDGES and Justices ANDERSON and SEYMORE.

## OPINION

JOHN S. ANDERSON, Justice.

This is an appeal from the granting of a summary judgment in favor of the appel-

lee, Michael J. Horrocks, administrator of the Estate of Mary Edythe Mullane, Deceased, the plaintiff in a declaratory judgment action seeking to quiet title to Mary Edythe Mullane's former homestead. We affirm.

### Factual and Procedural Background

Mullane was married to Robert Mullane. In 1977 the Mullanes purchased a home located at 11018 Southwold in Harris County, Texas (the "Homestead"). The Homestead was originally the community property of the Mullanes. Robert Mullane passed away in 1985, leaving his interest in the Homestead to his wife. Mullane died on March 21, 2003. Appellee is Mullane's only child and he was appointed the administrator of Mullane's estate in April, 2003.

After appellee was appointed administrator, he received a court order allowing him to sell the Homestead. At that point in time, he discovered a lien had been placed on the Homestead by appellant, Financial Freedom Senior Funding Corporation. Appellee learned that Mullane, on November 20, 2002, four months prior to her death, had completed a reverse mortgage transaction with appellant. As part of this transaction, Mullane signed an Adjustable Rate Note (Home Equity Conversion) and an Adjustable Rate Second Note (Home Equity Conversion) (the "Notes"). Mullane also signed an Adjustable Rate Deed of Trust (Home Equity Conversion) and a Second Adjustable Rate Deed of Trust (Home Equity Conversion) (the "Deeds of Trust"). Norman Johansen also participated in the reverse mortgage transaction and signed the above referenced documents as a "Borrower." Despite signing as a Borrower, the summary judgment evidence in the record on appeal does not reveal what, if any, relationship Johansen had with Mullane.

Paragraph 4 of the Notes contains the following language regarding payment:

### 4. MANNER OF PAYMENT

**(A) Time**

Borrower shall pay all outstanding principal and accrued interest to Lender upon receipt of a notice by Lender requiring immediate payment in full, as provided by Paragraph 7 of this Note.

Paragraph 7 of the Notes provides:

### 7. IMMEDIATE PAYMENT IN FULL

**(A) Death or Sale**

Lender may require immediate payments in full of outstanding principal and accrued interest if:

(i) All Borrowers die, or

(ii) All of a Borrower's title in the Property (or his beneficial interest in a trust owning all or part of the Property) is sold or otherwise transferred and no other Borrower retains (a) title to the Property in fee simple, (b) a leasehold under a lease for less than 99 years which is renewable or a lease having a remaining period of not less than 50 years beyond the date of the 100th birthday of the youngest Borrower (or retaining a beneficial interest in a trust with such an interest in the Property), or (c) a life estate in the Property.

The Notes also include paragraph 8 which provides: "**WAIVERS** Borrower waives the rights of presentment and notice of dishonor. 'Presentment' means the right to require [appellant] to demand payment of amount due. 'Notice of dishonor' means the right to require [appellant] to give notice to other persons that amounts due have not been paid." With regard to payment, the Deeds of Trust provide: "**Payment of Principal and Interest:** Borrow-

er shall pay when due the principal of, and interest on, the debt evidenced by the Note." In addition, the Deeds of Trust include Paragraph 9 containing the same language as Paragraph 7 of the Notes. The Deeds of Trust also provide: "BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered." Finally, Paragraph 4 of the Deeds of Trust includes the following language relevant to this appeal: "Borrower shall occupy, establish, and use the Property as Borrower's principal residence after the execution of this Security Instrument and Borrower (or at least one Borrower, if initially more than one person are Borrowers) shall continue to occupy the Property as Borrower's principal residence for the term of this Security Instrument."

After learning about the reverse mortgage transaction, appellee, on July 30, 2004, forwarded a letter to appellant that, if it had a claim against Mullane's estate, it was required to present the claim to appellee within the time prescribed by law. On July 17, 2007, more than four years after Mullane had died, appellant sent a Notice of Acceleration of Loan Maturity.

On August 24, 2007, appellee filed his second amended petition seeking, among other causes of action,[1] to quiet title to the Homestead and a declaratory judgment that appellee is the sole legal owner of the Homestead and that the Homestead is unencumbered by appellant's liens. That same day, appellee moved for summary judgment on his suit to quiet title and for declaratory judgment. The trial court granted appellee's motion and after denying appellant's motion for new trial, granted appellee's motion to sever and entered

a final judgment quieting title in favor of appellee. This appeal followed.

## DISCUSSION

Appellant raises two separate issues on appeal, both of which generally challenge the propriety of the trial court granting appellee's motion for summary judgment. However, within its brief, appellant raises two specific reasons the summary judgment should be reversed. First, appellant contends the Notes are not demand notes and, since they contained an optional acceleration clause, the statute of limitations did not begin to run until appellant actually accelerated them. Second, appellant asserts, assuming the statute of limitations began to run upon the existence of certain conditions, the summary judgment evidence does not establish as a matter of law that such conditions existed until August 3, 2006 at the earliest.

### A. The Standard of Review

The movant for summary judgment has the burden to show there is no genuine issue of material fact and is entitled to judgment as a matter of law. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex.1985). A party moving for summary judgment on a statute of limitations affirmative defense must prove conclusively that defense's elements. *Shah v. Moss*, 67 S.W.3d 836, 842 (Tex.2001). If the movant establishes that the statute of limitations bars the action, the non-movant must then adduce summary judgment proof raising a fact issue in avoidance of the statute of limitations. *Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 846 (Tex. 2005). In determining whether there is a genuine fact issue precluding summary judgment, evidence favorable to the non-

---

1. Appellee also filed suit against Norman Johansen alleging various causes of action in- cluding breach of fiduciary duty and theft.

movant is taken as true and the reviewing court makes all reasonable inferences and resolves all doubts in the non-movant's favor. *Nixon*, 690 S.W.2d at 548–549. If there is no genuine issue of material fact, summary judgment should issue as a matter of law. *Haase v. Glazner*, 62 S.W.3d 795, 797 (Tex.2001). We review a trial court's summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex.2005).

## B. Contract Construction

 This case involves the interpretation of two notes as well as two deeds of trust. Courts employ the same rules for interpreting a note that they use to interpret a contract. *EMC Mortgage Corp. v. Davis*, 167 S.W.3d 406, 413 (Tex.App.-Austin 2005, pet. denied). In addition, the interpretation of a deed of trust is governed by the same rules applied to contracts. *Robinson v. Saxon Mortgage Servs., Inc.*, 240 S.W.3d 311, 313 (Tex. App.-Austin 2007, no pet.). Further, a deed of trust is construed along with the note it is intended to secure. *Id.*

 In construing a written contract, the primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument. *Valence Operating Co.*, 164 S.W.3d at 662. Ordinarily, the writing alone is sufficient to express the parties' intentions for it is the objective, not subjective, intent that controls. *Matagorda County Hosp. Dist. v. Burwell*, 189 S.W.3d 738, 740 (Tex.2006) (per curiam). To achieve this, we examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless. *Valence Operating Co.*, 164 S.W.3d at 662. Contract terms are given their plain, ordinary, and generally accepted meanings unless the contract itself shows them to be used in a technical or different sense. *Id.* We construe contracts from a utilitarian standpoint bearing in mind the particular business activity sought to be served and will avoid when possible and proper, a construction which is unreasonable, inequitable, and oppressive. *Frost Nat'l Bank v. L & F Distrbs., Ltd.*, 165 S.W.3d 310, 312 (Tex.2005). The contract must be read as a whole, rather than by isolating a certain phrase, sentence, or section of the agreement. *Fein v. R.P.H., Inc.*, 68 S.W.3d 260, 266 (Tex.App.-Houston [14th Dist.] 2002, pet. denied). We presume the parties to the contract intended every clause to have some effect. *Id.* (citing *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996)).

## C. Are the Notes demand notes?

 Initially, appellant contends the Notes are not demand notes and the statute of limitations did not begin to run until after appellant sent its notice of acceleration. Appellee responds the Notes are demand notes because they lack a definite time of payment.

Section 3.108 of the Texas Business & Commerce Code provides, in relevant part:

(a) A promise or order is "payable on demand" if it:

(1) states that it is payable on demand or at sight, or otherwise indicates that it is payable at the will of the holder; or

(2) does not state any time of payment.

(b) A promise or order is "payable at a definite time" if it is payable on elapse of a definite period of time after sight or acceptance or at a fixed date or dates or at times readily ascertainable at the time the promise or order is issued . . .

Tex. Bus. & Com.Code Ann. § 3.108 (Vernon 2002).

Citing section 3.108(a)(2) of the Business & Commerce Code, appellee argues that since the Notes state they are due upon receipt of a notice from appellant requiring payment in full and do not otherwise include a specific time for payment, they are demand notes and limitations began to run on the date they were signed. However, to accept appellee's view of the Notes we would have to forget the rules of contract construction and ignore the language found at the end of Paragraph 4 limiting appellant's ability to demand payment to when one or more of the conditions listed in Paragraph 7 occurred. Instead of focusing on such a small portion of the Notes, we must examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the Notes so that none will be rendered meaningless. *Valence Operating Co.,* 164 S.W.3d at 662. While the Notes do not list a specific maturity date, they do contain conditions which create a readily ascertainable time for payment. Tex. Bus. & Com. Code Ann. § 3.108(b); *see Maceo v. Doig,* 558 S.W.2d 117, 120 (Tex.Civ.App.-Austin 1977, writ ref'd n.r.e.) (holding oral promise to pay in the summer was sufficiently definite to support a finding of a binding extension of the time for payment of a promissory note); *see also Martin v. Fannin Bank,* 389 S.W.2d 724, 726 (Tex.Civ. App.-Houston 1965, no writ) (holding promise to pay once a court had entered a particular order was sufficiently certain to support finding of a binding extension of the time for payment of a promissory note). Therefore, we hold the Notes are payable at a definite time as established by the conditions listed in Paragraph 7.

### D. When did appellant's cause of action accrue?

While we agree with appellant that the Notes are not demand notes, we do not agree with appellant's contention that the limitations period began to run only when appellant sent its notice of acceleration. In support for this argument, appellant relies exclusively on the case of *Holy Cross Church of God in Christ v. Wolf,* 44 S.W.3d 562, 566 (Tex.2001). In *Wolf,* a borrower obtained summary judgment on his claim that the lender's foreclosure sale was void under the statute of limitations. *Id.* While this particular fact is similar to the present case, the similarities stop there as the note at issue in *Wolf* was an installment note. *Id.* at 567. Unlike the note in *Wolf,* the Notes at issue here do not provide for repayment through periodic installment payments with provision for acceleration of any outstanding payments in the event of default. Instead, the Notes themselves provide that payment shall be made in full upon demand by appellant once specified conditions occurred. Because the entire debt would always be due upon demand, there was never any requirement that appellant accelerate the debt first. *See Ogden v. Gibraltar Sav. Ass'n.,* 640 S.W.2d 232, 234 (Tex.1982) (holding that a proper notice of acceleration cuts off the debtor's right to cure his default and gives notice that the entire debt is due and payable). Therefore, because we are not dealing with an installment note, *Wolf* does not control the accrual of appellant's cause of action to enforce the liens on the Homestead.

■ Because the Notes are payable at a definite time, appellant's cause of action to enforce the liens on the Homestead accrued when one or more of the conditions listed in Paragraph 7 occurred. *See Loomis v. Republic Nat'l Bank of Dallas,* 653 S.W.2d 75, 77 (Tex.App.-Dallas 1983, writ ref'd n.r.e.) (if a note is payable at a definite time, limitations begins to run at

the maturity of the note).[2] Therefore, we turn to appellant's second contention and examine whether appellee proved, as a matter of law, the date appellant's cause of action to enforce the liens on the Homestead accrued and when the statute of limitations expired.

Initially, appellant contends, based on language in the Deeds of Trust, that Johansen had a life estate in the Homestead and appellant's cause of action to enforce its liens did not accrue until August 3, 2006, the purported date of Johansen's death.[3] Appellant bases this contention on two excerpts from the Deeds of Trust: (1) "BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered;" and (2) "Borrower shall occupy, establish, and use the Property as Borrower's principal residence after execution of this Security Instrument and Borrower (or at least one Borrower, if initially more than one person are Borrowers) shall continue to occupy the Property as Borrower's principal residence for the term of this Security Instrument." Based on these short excerpts, appellant concludes the statute of limitations would not expire until August 3, 2010 and therefore the trial court improperly granted appellee's motion for summary judgment based on limita-tions.[4] We disagree with appellant's analysis.

Generally, a life estate is created by a deed or will where the language of the instrument manifests an intention on the part of the grantor or testator to pass to a grantee or devisee a right to possess, use, or enjoy property during the period of the grantee's life. *Eversole v. Williams*, 943 S.W.2d 141, 143 (Tex.App.-Houston [1st Dist.] 1997, no writ). While no particular form of words is necessary to create a life estate, the words used must clearly express the grantor's intent to create a life estate. *See Miller v. Wilson*, 888 S.W.2d 158, 161 (Tex.App.-El Paso 1994, writ denied). Here, appellant argues, without citing any legal authority addressing a deed of trust, that Mullane granted Johansen a life estate through the above referenced language in the Deeds of Trust, documents drafted by appellant, not Mullane. In making this argument, appellant mistakes the purpose of a deed of a trust. The purpose of a deed of trust is to secure to a lender the repayment of a borrower's debt. *Sonny Arnold, Inc. v. Sentry Sav. Assoc.*, 615 S.W.2d 333, 339 (Tex.Civ.App.-Amarillo, 1981) *aff'd* 633 S.W.2d 811 (Tex.1982). To accomplish this purpose, a deed of trust creates only a lien on property and does not constitute a conveyance of the proper-

---

**2.** This holding fits with the overall concept of reverse mortgages which permits an elderly borrower to convert the equity in their home into income with no personal obligation to repay the note. *Malinou v. Seattle Sav. Bank*, 970 A.2d 6, 8 n. 2 (R.I., 2009). Instead, the non-recourse loan, which is secured by a mortgage on the elderly borrower's home, is repaid in a lump sum from the proceeds from the sale of the home only after the borrower dies or sells the property. *Id.*

**3.** Of the conditions mentioned in Paragraph 7, the only one at issue in this appeal is 7(A)(ii)(c): "Lender may require immediate payments in full of outstanding principal and accrued interest if: ... All of a Borrower's title in the Property ... is sold or otherwise transferred and no other Borrower retains ... (c) a life estate in the Property." While it has no bearing on the outcome of this case, we note there is no evidence in the summary judgment record establishing the date of Johansen's death, or even that he has died.

**4.** A suit for the recovery of real property under a real property lien or the foreclosure of real property must be brought no later than four years after the cause of action accrues. Tex. Civ. Prac. & Rem.Code Ann. § 16.035(a) (Vernon 2002).

ty. *Sandel v. Burney,* 714 S.W.2d 40, 41 (Tex.App.-San Antonio 1986, no writ). We hold that, as a matter of law, the Deeds of Trust did not create a life estate in Johansen.

Therefore, we turn to the summary judgment evidence submitted by appellee. The evidence of legal title to the Homestead in the summary judgment record is the general warranty deed from Wagner Homes, Inc. to Robert and Mary Mullane, dated April 1, 1977. This is followed by the Last Will and Testament of Robert Mullane wherein he bequeathed and devised his entire estate in fee simple to Mary Mullane. Title was then confirmed in Mary Mullane by the Decree Admitting Will to Probate dated January 22, 1986. Because we have determined the Deeds of Trust did not convey a life estate to Johansen, appellee established, as a matter of law, that Mary Mullane was the sole owner in fee simple of the Homestead at the time of her death on March 21, 2003. In response, appellant produced no summary judgment evidence raising a fact issue that Johansen possessed a life estate on the Homestead. Therefore, under Paragraph 7 of the Notes, appellant's cause of action to enforce its liens on the Homestead accrued on March 21, 2003 and the statute of limitations expired four years later. Therefore, the liens and powers of sale to enforce the liens are unenforceable. Tex. Civ. Prac. & Rem.Code Ann. § 16.035(a) & (d) (Vernon 2002). We overrule appellant's issues on appeal.

## CONCLUSION

Having overruled appellant's issues on appeal, we affirm the trial court's final judgment.